Filed 9/5/13  In re Orlando A. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ORLANDO A., et al., Persons Coming Under the Juvenile Court Law. | B243807 |
| | (Los Angeles County Super. Ct. No. CK84195) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| ELIZABETH G., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marilyn Kading Martinez, Judge.  Affirmed.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Kim Nemoy, Principal Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Appellant mother seeks to reverse the dependency court's order terminating her parental rights with respect to her three children. She contends that there was insufficient evidence that her children were adoptable, and the court abused its discretion by not placing the children with maternal aunt. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Elizabeth G. (mother) is the mother of Orlando A. (Orlando), born in July 2008, Roxana A. (Roxana), born in September 2010, and Sonia A. (Sonia), born in September 2011.[1] This case began in September 2010, the day Roxana was born and had a positive toxicology report for Benzodiazepine. Mother also tested positive for Benzodiazepine but denied taking any drugs other than prescribed medication. Roxana exhibited withdrawal symptoms and was in respiratory distress immediately after birth. She was placed in the neonatal intensive care unit.

Mother disclosed that father, Jose A. (father), had a history of domestic violence. She said that she continued to have contact with him because she needed him to support his children financially. The Department of Children and Family Services (Department) detained Orlando and Roxana and filed a petition alleging that the parents' history of domestic violence and mother's unresolved history of substance abuse placed the children at risk of harm.

On September 24, 2010, the court sustained the petition's allegations, and ordered that the home of maternal aunt, Sonia G. (maternal aunt), be evaluated for

---

[1]     Mother also has two older children who are not at issue in this appeal.

2

placement.[2] The Department reported that it could not complete a background check for maternal aunt because she did not have proper identification. In addition, the Department found that there was insufficient space for Orlando and Roxana at maternal aunt's two-bedroom apartment because two adults and four children already lived there. Therefore, the Department did not recommend that the children be placed with maternal aunt.

In November 2010, the Department submitted its Jurisdiction/ Disposition Report in which it reported that Orlando was in foster care and Roxana remained hospitalized. The Department noted that mother and father did not regularly visit the children and concluded that neither parent was "very interested in maintaining regular contact" with the children. In January 2011, the Department reported that Roxana has been released from the hospital and was placed in foster care. Pursuant to a mediation agreement, the court declared the children dependents under Welfare and Institutions Code[3] section 300, subdivisions (b)[4] and (j),[5] placed Orlando and Roxana in Department custody, and ordered that reunification services be provided to mother and father.

---

[2]    The court misidentified Sonia G. as "paternal" aunt in the minute order, however, Sonia G. is actually mother's sister.

[3]    All further statutory references are to the Welfare and Institutions Code.

[4]    Section 300, subdivision (b), provides a basis for juvenile court jurisdiction if the child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness as a result of the parent's failure to adequately supervise or protect the child.

[5]    Section 300, subdivision (j), provides that the juvenile court may assert jurisdiction over a child when "[t]he child's sibling has been abused or neglected, as

In June 2011, the Department social worker spoke with maternal aunt again about adopting Orlando and Roxana. Maternal aunt reported that she would love for the children to be placed with her and that she hoped to move to a larger apartment that would accommodate them. However, she still did not have proper identification and, therefore, the Department was unable to complete her background check.

At the six-month review hearing in July 2011, the court found that father had not complied with the case plan and terminated his reunification services. The Department reported that mother was in partial compliance with her case plan, often arrived late to her visits with Orlando, and did not consistently visit Roxana.

On September 16, 2011, mother gave birth to Sonia. Sonia was hospitalized for withdrawal symptoms from Benzodiazepine. The Department filed a petition alleging that mother's substance abuse, the parents' history of domestic violence, and the parents' failure to participate in court-ordered programs placed Sonia at risk of harm.

At the 12-month review hearing in November 2011, the Department reported that Orlando and Roxana remained in their respective foster homes and had bonded with their caregivers. Mother was reported to be in partial compliance with her case plan and had visited Orlando and Roxana at least 2-3 times a month. The court ordered the Department to evaluate maternal aunt for placement once she obtained proper identification.

---

defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected as defined in those subdivisions."

In December 2011, the Department reported that Sonia was doing well in foster care and there were no "serious problems" to report. She was receiving all necessary medical care, was beginning to overcome the effects of her prenatal exposure to Benzodiazepine, and her long-term outlook was good.

In January 2012, the court terminated reunification services as to mother with respect to Orlando and Roxana. Sonia was declared a dependent under section 300, subdivisions (b) and (j), and the court ordered that no reunification services be provided to either parent. A permanent plan hearing for the three children was set for May 18, 2012.

The Department completed an adoption assessment for each child prior to the permanent plan hearing and found that each child was likely to be adopted. Orlando was described to be physically healthy, personable and developing normally for his age. Roxana "relate[d] well to [her] caregivers" and was "personable." The assessment also noted that Roxana required medication, showed delays in developing motor skills, and had been diagnosed with "failure to thrive." Sonia's assessment reported that she had been placed in a foster home and recommended that she be adopted with her siblings.

Roxana's foster mother was interested in adopting Roxana and Orlando but said that her home could not accommodate both of them. Orlando's foster mother said she was not able to adopt Orlando because her husband had a stroke. Another couple was identified as prospective adoptive parents, and they met the children in April 2012. On May 16, 2012, the children were placed in the home of their prospective adoptive

parents who were reported to be "providing a safe, caring and nurturing environment for the children."

At the permanent placement hearing on May 18, 2012, maternal aunt indicated that she had obtained proper identification such that the Department could now complete her background check. The court ordered that the hearing be continued to allow the Department to complete an evaluation of maternal aunt. The children remained placed in their prospective adoptive parents' home and were reported to be "thriving in the[ir] care." The Department had completed an assessment of maternal aunt and reported that maternal aunt said that she could not care for all three children but that she felt "pressured" by mother to tell the court that she could provide a placement for the children. At the permanent plan hearing, maternal aunt was asked whether she wanted all three children and she responded: "I don't want the three to be lost. I prefer just to have Orlando, but if it comes to that, I will take all three." Maternal aunt also stated that she had not yet moved to a larger apartment.

The court found that the children's "current caretakers do very much desire to adopt all three children," that "[t]he children do not have special needs that would pose a barrier to becoming adopted," and that "[w]hatever [] these children's needs, they are well-known to the caretakers, who are meeting their needs on a daily basis." On these grounds, the court found that it was likely the children would be adopted and terminated parental rights. Mother timely appealed.

## CONTENTIONS

Mother contends that substantial evidence does not support the court's finding that the children were adoptable, and the court abused its discretion by not placing the children with maternal aunt.

## DISCUSSION

1. *The Court Properly Found That the Children Were Generally Adoptable*

The juvenile court may terminate parental rights only if it determines by clear and convincing evidence that it is likely the child will be adopted. (Section 366.26, subd. (c)(1).) " 'In reviewing the juvenile court's order, we determine whether the record contains substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that [the child] was likely to be adopted within a reasonable time. [Citations.]' We give the court's finding of adoptability the benefit of every reasonable inference and resolve any evidentiary conflicts in favor of affirming. [Citation.]" (*In re Gregory A.* (2005) 126 Cal.App.4th 1554, 1561-1562.)

The question of adoptability posed at a permanent plan hearing usually focuses on "whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor." (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649.) "If the child is considered generally adoptable, we do not examine the suitability of the prospective adoptive home. [Citation.]" (*In re Carl R.* (2005) 128 Cal.App.4th 1051, 1061.) "[T]he fact that a prospective adoptive family has been identified is an indication that the child is likely to be adopted within a reasonable time." (*In re I.I.* (2008) 168 Cal.App.4th 857, 870.)

Here, mother contends that there is insufficient evidence to support the court's finding that the children were generally adoptable because the children were part of a sibling set that is difficult to place for adoption. However, a child's membership in a sibling set is not a relevant consideration in determining a child's adoptability. (*In re I.I., supra,* 168 Cal.App.4th at p. 872.) " 'The issue of adoptability . . . *focuses on the minor*, e.g., whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor. [Citations.]' " (*Id*. at p. 870 [emphasis added].) Accordingly, a finding of adoptability in the context of a sibling group does not require a finding that the children are likely to be adopted as a sibling group within a reasonable time.[6] (*Id.*, p. 872 at fn. 3.)

Mother also argues that there was insufficient evidence of the children's adoptability because Roxana exhibited numerous physical and developmental problems and her medical issues were not adequately documented in the record. Mother's argument is, in essence, a challenge to the court's finding that Roxana was adoptable. Here, the evidence indicated that the prospective adoptive parents were informed about Roxana's current physical and developmental state as she had been living with them for almost two months. The prospective adoptive parents' continued interest in adopting

---

[6] We disagree with *In re B.D.* (2008) 159 Cal.App.4th 1218 to the extent it held that a finding of adoptability in the context of a bonded sibling group requires a finding that the children are likely to be adopted *as a sibling group* within a reasonable time. However, even if we were to follow the court's holding in *In re B.D.,* there was substantial evidence here that the sibling group was likely to be adopted: a prospective adoptive family had been identified for the sibling group, the children were young, the two older children were personable, and the infant was assessed to have no long-term health issues.

Roxana despite her problems constituted evidence that her physical and developmental condition was not likely to dissuade individuals from adopting her. (*In re Sarah M., supra,* 22 Cal.App.4th at p. 1649.) Roxana's foster mother was also familiar with Roxana's needs and had wanted to adopt her as well. Furthermore, the evidence showed that Roxana was an engaging one-year-old girl who was able to relate well to her caregivers. Accordingly, Roxana's physical and developmental issues were not a significant bar to her adoption. Mother has, therefore, not shown that insufficient evidence supported the court's finding that the children were adoptable.[7]

2.      *The Court Properly Exercised Its Discretion When It Declined to Place the Children With Maternal Aunt*

Mother contends that the court abused its discretion by not placing the children with maternal aunt at the permanent plan hearing because maternal aunt was a suitable placement and was entitled to preference over the prospective adoptive parents.[8] "A juvenile court's placement orders are reviewed under the abuse of discretion standard; the court is given wide discretion and its determination will not be disturbed absent a manifest showing of abuse. [Citation.]" (*In re Sabrina H.* (2007)

---

[7]      Because substantial evidence supported a finding that the children were generally adoptable, we need not address mother's argument that the children were not specifically adoptable. (*In re Carl R., supra,* 128 Cal.App.4th at p. 1061.)

[8]      The Department argues that mother lacked standing to challenge the children's placement because a reversal of the placement decision would not affect mother's parental rights. However, "[t]he placement of a dependent child with relatives can, under certain circumstances, make the termination of parental rights unnecessary. [Citation.]" (*In re K.C.* (2011) 52 Cal.4th 231, 237 [citing to section 366.26, subd. (c)(1)(A) which provides an exception to the termination of parental rights when the child is living with a relative and other circumstances are present.].) Accordingly, mother does have standing to challenge the children's placement.

9

149 Cal.App.4th 1403, 1420.) Although mother argues that the evidence established that maternal aunt was a suitable placement, in fact, maternal aunt had told the Department that she could not adopt all three children, and that she felt "pressured" by mother to tell the court that she could. In addition, maternal aunt lived in an apartment that could not accommodate the children. By contrast, the children's prospective adoptive parents "very much desire[d] to adopt all three children" and their home study had been approved. Accordingly, the court did not abuse its discretion in declining to place the children with maternal aunt.

## *DISPOSITION*

The order terminating mother's parental rights is affirmed.

## *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

CROSKEY, J.

WE CONCUR:

KLEIN, P. J.

KITCHING, J.